```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
```
**LEXINGTON**

| | |
|---|---|
| THE TRUST COMPANY OF NEW JERSEY, | ) ) ) Civil Action No. 5:04-394-JMH |
| Appellee, | ) ) ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** ) ) |
| WILLIAM EDWARD McCRACKEN, | ) ) |
| Appellant. | ) ) ) |

      **&ast;&ast; &ast;&ast; &ast;&ast; &ast;&ast; &ast;&ast;**

This matter is before the Court on appeal from the Orders of Chief Bankruptcy Judge Joseph M. Scott, Jr., United States Bankruptcy Judge for the Eastern District of Kentucky, finding in favor of the plaintiff that a portion of Appellant's debt in the amount of $156,550.14 to Appellee was nondischargeable. Appellant filed a brief [Record No. 10], to which Appellee responded [Record No. 11]. The time for reply has passed and the matter is ripe for decision.

### I. PROCEDURAL BACKGROUND

The debtor appellant, Dr. William Edward McCracken ("McCracken" of "the debtor"), filed a voluntary petition for Chapter 7 bankruptcy in the United States District Court for the Eastern District of Kentucky on May 9, 2003. On the same day, the

appellee, the Trust Company of New Jersey ("the Trust Company"),[1] obtained a default judgment against McCracken in New Jersey for conversion, embezzlement, and violation of the New Jersey Fraudulent Transfer Act.

On August 1, 2003, the Trust Company instituted an adversary proceeding against McCracken in the United States Bankruptcy Court for the Eastern District of Kentucky, seeking a determination that a portion of the debt owed to it by McCracken was nondischargeable. On December 8, 2003, the Trust Company amended the complaint to add Glenda C. McCracken, the debtor's wife. On February 10 & 11 of 2004, the bankruptcy court held a trial on the adversary proceeding and took the matter under advisement. At the time of the trial, McCracken's total debt to the Trust Company equaled $856,393.02.

On February 23, 2004, the bankruptcy court dismissed Glenda C. McCraken as a party. On March 11, 2004, the bankruptcy court entered an Order in favor of the Trust Company, finding a portion of the debt owed to the Trust Company was nondischargeable, in the amount of $166,550.14, because McCracken was willful and malicious in disposing of the Trust Company's assets. Specifically, the assets at issue were insurance proceeds and two legal settlements on accounts receivable for the AET and ENSR accounts. The court

---

[1] In some of the parties' pleadings to the bankruptcy court, Appellee is referred to as North Fork Bancorporation, Inc., because North Fork is the successor in interest to the Trust Company. In the briefs to this Court, the parties refer to Appellee as the Trust Company and, thus, the Court refers to Appellee as such.

found that McCracken deposited these assets into bank accounts that were not disclosed to the Trust Company and should have been forfeited to the Trust Company pursuant to the parties' Loan Security Agreement.

In the March 11, 2004 Order, the bankruptcy court ordered the Trust Company to make an accounting of all repossessed property that had not been disposed of by the February 10, 2004 trial date and set the matter for a valuation hearing. On May 4, 2004, the valuation hearing was held. By Order of June 9, 2004, the bankruptcy court found that the Trust Company had only failed to account for S&D's computers. Consequently, the court deducted the sum of $10,000 from the nondischargeable amount for commercial unreasonableness. On June 24, 2004, the court entered Judgment in favor of the plaintiff in the total amount of $156,550.14. McCracken appeals 1) the bankruptcy court's finding of nondischargeability and 2) the court's determination that the nondischargeable judgment should only be reduced $10,000. The Trust Company did not appeal the bankruptcy court's reduction of the nondischargeable judgment even though the Trust Company argued below that commercial unreasonableness does not reduce nondischargeable judgments.

## II. FACTUAL BACKGROUND

McCracken created S&D Environmental Services, Inc. ("S&D") in

3

the mid 1980s. S&D provided environmental remediation and emergency response services. In 1999, S&D began a business relationship with the Trust Company, wherein numerous loans were obtained. The loans were governed by three documents, the Loan and Security Agreement, the Term Note, and the Revolving Note. The Loan Security Agreement granted a security interest in favor of the Trust Company in S&D and McCracken's personal property. A financing statement was filed naming the Trust Company as the secured party with a security interest in all accounts receivable, deposits, contract rights, intangibles, insurance policies, and rights to refunds. The Loan Security Agreement provided that S&D was required to obtain "[p]ermission to open any . . . [bank] accounts with any other bank or financial institution . . . in writing, at least fifteen (15) days in advance of the date when any such proposed account is to be opened." (Loan Security Agreement at ¶ 8.10.)

In 2001, McCracken discovered that S&D's chief financial officer, Kenneth Douglas, was perpetrating fraud and embezzling money from S&D. The Trust Company advanced another loan in the amount of $200,000 to S&D in order to keep the company running, but a month later McCracken notified the Trust Company that S&D would have to cease operations.

In February of 2002, the Trust Company notified McCracken that S&D was in default and repossessed S&D's assets, including hard

4

assets and accounts receivable. The Trust Company sent letters to S&D's account debtors directing payment to the Trust Company. The letters were cosigned by McCracken. From February of 2002 to March 27, 2002, the Trust Company agreed to pay McCracken for his services in winding down S&D, but after March 27, 2002, the Trust Company advised McCracken that he would no longer be receiving payment for these services.

McCracken formed A&E International ("A&E") in March 2001. A week before notifying the Trust Company that S&D was ceasing operations, McCracken drafted service agreements between S&D and A&E for the latter to provide winding down services that were to be performed by McCracken. At trial, McCracken admitted that he created invoices two years after A&E, i.e. McCracken, was paid. Through A&E, McCracken was paid for collecting on the account debts of S&D.

At trial, the Trust Company admitted evidence that McCracken opened five bank accounts, three in S&D's name and two in A&E's name, without disclosing such accounts to the Trust Company. McCracken received and did not turn over various funds arising from legal settlements, including the AET and ENSR settlements, and insurance proceeds, which were deposited into the S&D bank accounts and hidden from the Trust Company. McCracken also made disbursements from the S&D accounts and placed the deposits into the A&E accounts without disclosing the deposits or withdrawals to

5

the Trust Company.

In early 2002, the Trust Company became aware of one of the bank accounts and demanded a full accounting and a return of money disbursed. Although McCracken argued that he thought certain receivables were ineligible because they were "disputed" or were "bad debts" he admitted at trial that he was aware of the security interest. Of the $167,700 McCracken collected from S&D debtors and placed into the bank accounts, $123,000 was paid to McCracken and his wife Glenda.

### III. STANDARD OF REVIEW AND JURISDICTION

The Court has jurisdiction to review the final decision of United States Bankruptcy Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 158(a). McCracken appeals the Order entered on March 11, 2004, finding that a portion of McCracken's debt to the Trust Company was nondischargeable. McCracken also appeals the June 24, 2004 Order reducing the award by $10,000, arguing that the nondischargeable sum should have been reduced to zero due to the Trust Company's commercial unreasonableness in not collecting all accounts prior to trial.

The Court "reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Kennedy v. Mustaine* (*In re Kennedy*), 249 F.3d 576, 579 (6th Cir. 2001). A bankruptcy court's findings of fact are clearly erroneous "when

6

although there is evidence to support [the findings], the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Nat'l City Bank v. Plechaty* (*In re Plechaty*), 213 B.R. 119, 121 (B.A.P. 6th Cir. 1997) (internal quotations and citations omitted). Due regard is given to the bankruptcy court's credibility determinations. *Id*.

"Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo." *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000). The factual determinations underlying the determination of dischargeability, however, must be affirmed unless clearly erroneous. *Id*.

**IV. DISCUSSION**

**A.   Was the Debt Nondischargeable?**

Pursuant to 11 U.S.C. § 523(a)(6), a debt is nondischargeable if there is "willful and malicious injury by the debtor to another entity or to the property of another entity." Citing the Restatement (Second) definition for an intentional tort, the Supreme Court in *Geiger* held that the standard to prove willful and malicious injury for § 523 is the same as the standard for proving an intentional tort. *Kawaauhau v. Geiger*, 523 U.S. 57, 62-63 (1998). Thus, a willful and malicious injury must either be desired or intended by the debtor. *Geiger*, 523 U.S. at 61-62. After *Geiger*, the Sixth Circuit expressly adopted the Restatement

7

(Second) definition and held that to prove nondischargeability, the proponent must prove that "'the actor desire[d] to cause the consequences of his act, or . . . believe[d] that the consequences [were] substantially certain to result from it.'" *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999) (quoting Restatement (Second)) (internal citations omitted).

Both the Supreme Court and the Sixth Circuit have held that wrongful disposition of another's property is sufficient to prove willful and malicious injury. *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916); *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 306-307 (B.A.P. 6th Cir. 2004). For example, in *McIntyre*, the Supreme Court held that "deliberately disposing of [property] without semblance of authority" constituted willful and malicious injury by the debtor. *McIntyre*, 242 U.S. at 141-142. Recently, the Sixth Circuit Bankruptcy Appellate Panel held that a debtor believed that the consequences of his actions were substantially certain to result in injury to a property owner of a patent when the debtor did not pay the owner for a licensing fee. *In re Trantham*, 304 B.R. at 306-307. The panel held that because the bankruptcy court found that the debtor "admitted that his infringement was solely for the purpose of avoiding payment of the license fee . . . and . . . that there was some evidence that [the debtor] tried to conceal his infringement by using a false name[,]" it was error for the bankruptcy court to conclude that the debtor

did not know that "economic damage to [the owner] was substantially certain to result." *Id.* at 307. The panel noted that the debtor's "efforts at concealment show that he believed [the owner] was damaged and had good cause to pursue him if the damage came to light." *Id.*

The bankruptcy court in the instant matter relied upon the same standard discussed above and held that "the evidence is clear that Mr. McCracken's debt to [t]he Trust Company of New Jersey for the AET and ENSR settlements and for insurance refunds, in the total amount of $166,550.14, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6)." (Mar. 11, 2004 Bankr. Op'n at 4.) The court based this conclusion on finding that it was incredible "that Mr. McCracken did not know Plaintiff's collateral was involved when he deposited funds into five accounts at banks other than [t]he Trust Company of New Jersey, bank accounts which he opened unbeknownst to Plaintiff and which he knew were in violation of the loan agreement." (*Id.* at 4.) Further, the court found that the definition of "accounts" in the loan agreement clearly included legal settlements and insurance proceeds. (*Id.* at 4-5.)

McCracken does not argue that the bankruptcy court erred in analyzing the law of nondischargeability. It is clear that a disposition of another's property is sufficient to prove "willful and malicious" injury pursuant to § 523(a)(6). *McIntyre*, 242 U.S. at 141-142; *In re Trantham*, 304 B.R. at 306-307. Instead,

9

McCracken argues that the bankruptcy court erred in finding his debt to the Trust Company was nondischargeable because the evidence at trial showed that he thought that the Trust Company was satisfied due to the Trust Company's seizure of collateral in excess of the debt owed. McCracken also argues that he thought that the legal settlements and insurance proceeds deposited into the undisclosed bank accounts were not subject to the Loan Security Agreement because he thought the settlements were considered legal matters and not accounts.[2]

While the Court reviews *de novo* the bankruptcy court's determination of nondischargeability, the Court reviews the factual determinations underlying the decision under a clearly erroneous standard. *In re Bailey*, 254 B.R. at 903. Based on the evidence adduced at trial, the Court finds that the bankruptcy court did not clearly err in finding that McCracken intended to dispose of the property at issue in a covert manner so that the Trust Company would not be aware of its disposition, and as such, was substantially certain that injury to the Trust Company would inure.

---

[2] McCracken also argues that he was effectively "sealed out" of collecting on outstanding accounts and, thus, the Trust Company would not have known about the legal collections or insurance proceeds because they were hidden. McCracken essentially argues that it is the Trust Company's fault for not discovering the hidden assets because the Trust Company was the party that refused assistance from McCracken. The Court finds no merit in this argument. Even if the Trust Company refused assistance from McCracken, this in no way absolves McCracken from concealing assets that were subject to the Loan Security Agreement.

First, the bankruptcy court's finding that it is incredible that McCracken believed that the legal matters or insurance proceeds were not collateral subject to the Trust Company's security interest is not clearly erroneous. The Loan Agreement provided that the security interest applied to all accounts, defining accounts as including "rights to refunds" and "insurance proceeds." (Loan Agreement at 2, § 1.1.) Further, the manner in which the money from the legal settlements and insurance proceeds were deposited into five different bank accounts secretly opened and maintained by McCracken supports the bankruptcy court's finding that McCracken both knew that the money collected was subject to the security interest and that he was purposefully hiding the assets from the Trust Company. For instance, the Loan Security Agreement required the debtor:

> Keep and maintain, and cause all entities controlled by Borrower to keep and maintain, all existing and future operating checking, cash collateral, savings, payroll . . . and other deposit accounts with Bank, except as expressly permitted in advance, in writing, by Bank, in its discretion. Permission to open any such accounts with any other bank or financial institution shall be requested of Bank in writing, or at least fifteen (15) days in advance of the date when any such proposed account is to be opened.

(*Id*. at 23, § 8.10.)

Thus, the bankruptcy court's findings that McCracken knew that the collateral was the property of the Trust Company and that he concealed and disposed of the property were not clearly erroneous. Accordingly, the bankruptcy court's legal determination of

nondischargeability based on these findings is affirmed.

**B. Did the Bankruptcy Court Err in Not Further Reducing the Amount of the Nondischargeable Debt?**

In its initial opinion finding $166,550.14 of McCracken's debt to the Trust Company nondischargeable, the bankruptcy court held that the Trust Company had "not acted in a commercially reasonable manner by not having disposed of all repossessed property by the time of trial of this adversary proceeding." (Mar. 11, 2004 Bankr. Op'n at 5.) The court also held that "[the Trust Company]'s having chosen to proceed in the sales process without benefit of Mr. McCracken's expertise and its having 'sealed out' the debtor *may* have contributed to the sales of assets bringing little or nothing." (*Id*.) (emphasis added). Consequently, the bankruptcy court ordered that the Trust Company "must fully account to the debtor, as guarantor, for all items, including those which have been not . . . sold." (*Id*. at 5-6.) The court found $166,550.14 of nondischargeable debt included "the AET and ENSR settlements and for insurance refunds." (*Id*. at 5.)

After the initial finding of nondischargeability, the court held an evidentiary hearing and accepted briefs from the parties prior to issuing its Order Regarding Valuation Hearing that reduced the amount of nondischargeable debt by $10,000 to total $156,550.14. The court found that the Trust Company made a full accounting and credited McCracken's account accordingly. The

12

reduction of $10,000 was for repossessed, but unsold, computer equipment. The Trust Company admitted that the computer equipment could not be located and did not rebut McCracken's valuation of $10,000 for the computers. In making the ruling, the bankruptcy court relied upon the affidavits submitted by the parties and the evidence presented at the hearing.

McCracken argues 1) that the bankruptcy court erred in finding that the Trust Company made a full accounting because there were accounts receivable that were unrecovered and not included in the accounting and 2) that the court erred in not reducing the nondischargeable judgment more than $10,000 because there were hundreds of thousands of dollars in accounts receivable that were not collected.

The Trust Company argues that the bankruptcy court erred in reducing the nondischargeable debt *sua sponte* because McCracken had not argued or plead this defense and that an accounting is not germane to nondischargeability. Alternatively, the Trust Company argues that the findings that the company provided a full accounting and that the company acted in a commercially reasonable manner with the exception of the sale of the computers were not clearly erroneous.

Although the Trust Company argues that the bankruptcy court erred in assessing commercial reasonableness *sua sponte* and in reducing the nondischargeable amount by the hard assets that were

13

not a part of the nondischargeable debt, the company did not appeal the bankruptcy court's reduction. Accordingly, the issue of whether the bankruptcy court erred in reducing the nondischargeable amount is not ripe for appeal and will not be addressed.

Thus, the Court will assume without deciding that the bankruptcy court was correct in reducing the nondischargeable judgment for commercial unreasonableness and will review only whether the Trust Company's accounting was proper and whether the reduction should have been greater than $10,000. Based on the evidence presented at trial, the Court holds that the bankruptcy court's findings that the accounting was proper and subsequent reduction based only the cost of the computers were not clearly erroneous.

First, as to the accounting, the bankruptcy court ordered the Trust Company to submit an accounting of all property not disposed of by February 10, 2004, the date of the trial. McCracken argues that the accounting did not comply with the court's order because 1) the Trust Company did not mention any outstanding accounts receivable until the third document submitted prior to the valuation hearing and 2) the affidavit identifying the outstanding accounts receivable did not specifically identify the amount of accounts that were outstanding.

McCracken's arguments are not persuasive. First, the timing of the evidence submitted for the valuation hearing is of no

14

consequence if the evidence is in fact submitted prior to the hearing. The Trust Company submitted the affidavit of Steven Foreleiter ("Foreleiter"), the Trust Company's Vice-President, admitting that there were outstanding accounts receivable, on April 6, 2004, and the hearing was on May 11, 2004.[3] Second, the exact amount of the outstanding accounts receivable was not pertinent to the accounting because the amount of outstanding accounts was already in the record. Thus, the Trust Company complied with the bankruptcy court's order for a full accounting.

The Court likewise holds that the bankruptcy court's finding that the only reduction for commercial unreasonableness was for the unsold computers was not clearly erroneous. McCracken argues that the outstanding accounts receivable should have reduced the nondischargeable judgment to zero because the bankruptcy court found that the Trust Company "sealed out" McCracken from assisting in collection and, thus, acted commercially unreasonable. Although the bankruptcy court held that the Trust Company "sealed out" McCracken from collection on the accounts, this finding is not tantamount to a finding of commercial unreasonableness because the bankruptcy court merely held that the fact of excluding the debtor from collecting on accounts "*may* have contributed to the sales of

---

[3] The Trust Company's initial deadline to submit affidavits for the valuation hearing was March 26, 2004. By Order entered on April 8, 2004, the bankruptcy court permitted the Trust Company to file Mr. Foreleiter's affidavit past the deadline and permitted additional time for McCracken to respond to the affidavit.

assets bringing little or nothing." (Mar. 11, 2004 Bankr. Op'n at 5) (emphasis added).

Ultimately, the only reduction for commercial unreasonableness was for the unsold computers and the court noted that computers "are notorious for rapidly declining in value." (*Id*.) Finding that the Trust Company was only commercially unreasonable in failing to sell the computers and not finding unreasonableness in the Trust Company's late collection of the outstanding accounts receivable was not clearly erroneous because the evidence supported the fact that the Trust Company was actively pursuing collection efforts for the outstanding accounts through litigation that was at the expense of the Trust Company. (*See* Foreleiter Aff., Apr. 6, 2004); *Sec. Sav. Bank v. Tranchitella*,[4] 592 A.2d 284, 289 (N.J. Super. Ct. App. Div. 1991) (holding that price is not dispositive of commercial reasonableness as long as the secured party made a good faith effort to obtain the highest price). Therefore, it was not clearly erroneous for the bankruptcy court to conclude that the Trust Company did not act in a commercially unreasonable manner in collecting outstanding accounts prior to trial.

## V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

---

[4] McCracken did not object to the bankruptcy court applying New Jersey law to determine commercial reasonableness.

(1) That the bankruptcy court's Orders granting judgment of nondischargeable debt in the amount of $156,550.14 be, and the same hereby are, **AFFIRMED**; and

(1) That the matter be, and the same hereby is, **DISMISSED WITH PREJUDICE** and **STRICKEN FROM THE ACTIVE DOCKET**.

This the 1st day of August, 2005.



Signed By:
*Joseph M. Hood*
United States District Judge